# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50425

| | |
|---|---|
| STATE OF IDAHO,<br><br>    Plaintiff-Respondent,<br><br>v.<br><br>TERESA ANN McCLINTON,<br><br>    Defendant-Appellant. | )<br>)  **Filed: March 22, 2024**<br>)<br>)  **Melanie Gagnepain, Clerk**<br>)<br>)  **THIS IS AN UNPUBLISHED**<br>)  **OPINION AND SHALL NOT**<br>)  **BE CITED AS AUTHORITY**<br>)<br>)  **AMENDED OPINION THE**<br>)  **COURT'S PRIOR OPINION**<br>)  **DATED MARCH 13, 2024, IS**<br>)  **HEREBY AMENDED**<br>) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Scott Wayman, District Judge.

Judgment of conviction, <u>affirmed.</u>

Erik R. Lehtinen, State Appellate Public Defender; Elizabeth Ann Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Teresa Ann McClinton appeals from the district court's judgment of conviction for two counts of possession of a controlled substance, Idaho Code § 37-2732(c)(1), and one count of possession of drug paraphernalia, I.C. § 37-2734A(1). She argues the district court committed reversible error by denying her motion for a mistrial made after the introduction of testimony suggesting that the controlled substances McClinton was charged with possessing are felony offenses. The State agrees that such testimony was inadmissible, but argues the error was harmless. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

A customer found a wallet on the floor of a Coeur d'Alene casino and turned it over to casino staff who found two syringes and suspected drugs. Law enforcement contacted McClinton, who confirmed that the wallet belonged to her. The State charged McClinton with two counts of felony possession of a controlled substance (methamphetamine) and one count of misdemeanor possession of drug paraphernalia.

On the second day of trial, the State called an evidence specialist (who generally determines whether drugs are sent to the lab for testing) to provide foundational testimony regarding the policies and procedures of the Kootenai County Sheriff's Office. The evidence specialist stated: "We are required at the sheriff's office to send all felony drugs to the lab and all pills for identification. And misdemeanor drugs only go to the lab upon request from the prosecutor's office." Later, during redirect testimony, the following exchange occurred:

> Q. In your training and experience, if a piece of evidence is suspected to contain heroin, is that the type of substance that would be automatically sent to the lab for testing?
> A. Yes, because that would be a felony charge. So anything--even marijuana, if it was given to us, if it's a felony charge, it has to go to the lab.
> Q. And what about for methamphetamine?
> A. That is a felony charge. That would go to the lab.

McClinton objected and asked to make a motion outside the presence of the jury. The district court sustained the objection and excused the jury. McClinton moved for a mistrial based on the State eliciting testimony that possession of methamphetamine is a felony offense; further, McClinton argued that the State's elicitation of the testimony amounted to prosecutorial misconduct. The State explained that it was aware that the policy of the sheriff's office depended on whether a crime was a misdemeanor or a felony, so it specifically asked whether heroin and methamphetamine were the type of drugs that would be sent to the lab, not what level of offense they would be characterized as. The State argued that any prejudice could be cured by an instruction.

The district court found that the evidence specialist "was just relating the procedures that the sheriff's department uses" to classify the types of drugs that get tested, which "isn't necessarily the kind of testimony that would automatically assume that the defendant is on trial for a felony

charge based on that explanation." The district court continued, "However, when the prosecutor kept asking questions about the nature of the drug, methamphetamine, and whether it is specifically a felony level drug, I find that that is the type of information that should not be brought before a jury." Nonetheless, the district court concluded that it could "reduce, if not eliminate, any prejudice to the defendant" by giving a curative instruction, and that McClinton would "still receive a fair trial." Accordingly, the district court denied McClinton's motion for a mistrial. The district court later instructed the jury: "Do not concern yourself with the classification of an offense as a misdemeanor or felony. That subject must not in any way affect your verdict."

The jury found McClinton guilty of all three charges. McClinton timely appeals.

## II.

## STANDARD OF REVIEW

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

## III.

## ANALYSIS

McClinton argues the district court committed reversible error by denying her motion for a mistrial made after the jury was improperly informed that the possession of controlled substance charges are felonies. The State agrees the evidence was inadmissible, but argues the error was harmless and, moreover, any harm was cured because the district court provided the jury with a curative instruction. We affirm.

3

A mistrial may be declared, upon the defendant's motion, if there has been an error or legal defect during the trial which is prejudicial to the defendant and deprives the defendant of a fair trial. *State v. Popp*, 129 Idaho 597, 603, 930 P.2d 1039, 1045 (Ct. App. 1996). However, the admission of improper evidence does not automatically require the declaration of a mistrial. *State v. Johnson*, 163 Idaho 412, 422, 414 P.3d 234, 244 (2018). Rather, the core inquiry when the denial of a mistrial is challenged on appeal is whether it appears from the record that the event triggering the mistrial motion contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the event not occurred. *State v. Palin*, 106 Idaho 70, 75, 675 P.2d 49, 54 (Ct. App. 1983). In other words, the district court's denial of a motion for mistrial will be upheld if the error underlying the motion was harmless. *State v. Smith*, 170 Idaho 800, 810-11, 516 P.3d 1071, 1081-82 (2022).[1]

In evaluating the denial of a motion for mistrial, the threshold inquiry on appeal is whether the State introduced error. *State v. Richardson*, 168 Idaho 25, 30, 478 P.3d 754, 759 (Ct. App. 2020). In this case, it is not disputed that the State introduced the error by the introduction of testimony suggesting that possession of methamphetamine involves a felony. Thus, we review whether the error underlying the motion was harmless. *Smith*, 170 Idaho at 810-811, 516 P.3d at 1081-1082. Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in

---

[1] McClinton also argues that the improper introduction of the evidence amounted to prosecutorial misconduct. However, we need not separately analyze the claim of prosecutorial misconduct as it is based upon the same error asserted in the motion for mistrial. In addition, "Where a defendant demonstrates that prosecutorial misconduct has occurred, and such misconduct was followed by a contemporaneous objection by defense counsel, such error shall be reviewed for harmless error." *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2008). Thus, the harmless error analysis applies to both claims.

relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Turning to the probative force or prejudicial effect of the error, McClinton asserts that the term felony carries a certain stigma in that it is common knowledge that felons have to disclose such on job applications, are not eligible to vote, and cannot possess firearms. Even assuming for sake of argument that the above factors are common knowledge, McClinton does not explain how that knowledge translates to a bias or how the stigma of being a felon would have any effect on the jury or the verdict. If, as McClinton argues, there was a "gaping hole" in the State's proof, then it seems the jury would be more likely to acquit to avoid stigmatizing McClinton on thin evidence. McClinton also argues that the standard jury instructions do not include the word felony, suggesting that is so because "using such words would be inappropriate." However, that argument only goes to whether there was an error, not its effect. Finally, McClinton argues that informing the jury that a charge is a felony "allows [the] jury to concern themselves with punishment." McClinton seems to suggest that the jury would be more likely to convict if the jurors knew the charge is a felony because it is common knowledge a felony carries a greater punishment than a misdemeanor. This argument presupposes that the jury has a desire to punish the defendant in the first place, which is both unsupported and unsupportable. It is true that telling a jury the charge is a felony might have a tendency to reinforce the seriousness of the alleged crime, but whether the crime for which the defendant is charged is a felony or a misdemeanor has not been shown to bear on the determination of guilt. McClinton has failed to demonstrate little, if any, prejudice or harm from the error.

On the other hand, the probative force of the record as a whole, excluding the erroneous evidence, supporting McClinton's guilt beyond a reasonable doubt is substantial. Casino security footage captured McClinton's wallet falling out of her lap onto the floor which was picked up by another person and turned over to the floor attendant who took it to the security office. The wallet contained two syringes and a baggie as well as McClinton's identification and financial cards. McClinton reported that her wallet was missing, but later, when law enforcement arrived, she headed for the door. When a deputy later approached McClinton, she stated that the contents of the wallet were hers. When the deputy mentioned there was something in the wallet that was "suspect," McClinton responded "needles?" Thus, the evidence of guilt is strong.

The only challenge to the evidence of guilt is a claim by McClinton on appeal that there is a "gaping hole" in the evidence. She points to the casino security footage which shows that, for approximately twenty seconds, the wallet and the unknown female who picked up the wallet are completely out of view, except for her lower legs. McClinton claims this was enough time to place drugs in the wallet. McClinton neither raised this as part of her defense theory nor presented any evidence on this defense. Indeed, her claim overlooks that she had identified needles in response to the deputy's expression of concern for some of her wallet's contents.

Moreover, the curative instruction served to further lessen any harm from the error. The Court presumes the jury followed the curative instruction given to it by the district court. *See Johnson*, 163 Idaho at 424, 414 P.3d at 246. As stated by the United States Supreme Court:

> We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be "devastating" to the defendant.

*Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (internal citations omitted). In *Johnson*, 163 Idaho at 423, 414 P.3d at 245, a police officer made an inadmissible comment during trial about the defendant's right to remain silent. The district court struck the officer's comment, gave a curative instruction, and denied the motion for mistrial. *Id.* The Idaho Supreme Court affirmed, concluding there was no evidence to rebut the presumption that the jury followed the trial court's curative instruction. *Id.* at 424, 414 P.3d at 246. Similarly, in *State v. Rose*, 125 Idaho 266, 269, 869 P.2d 583, 586 (Ct. App. 1994) this Court held:

> Given our review of the trial, we cannot say that the district court erred in denying the motion for a mistrial. The testimony was properly stricken from the record and the district court gave a curative instruction. [The defendant] does not offer any indication that the jury failed to follow this instruction, nor do we find such an indication in our own review.

As noted, the district court provided a curative instruction to the jury, stating: "Do not concern yourself with the classification of an offense as a misdemeanor or felony. That subject must not in any way affect your verdict." McClinton has offered no evidence or argument that the jury failed to follow the instruction. The district court's curative instruction ameliorated any harm caused by the admission of evidence regarding the felony status of the crimes charged.

Weighing the probative force of the record as a whole, while excluding the erroneous evidence and at the same time comparing it against the probative force of the error, the error's

6

effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error. Thus, the error did not contribute to the verdict rendered and is harmless. The district court did not err in denying the motion for mistrial.

## IV.

## CONCLUSION

The district court did not err by denying McClinton's motion for mistrial. Therefore, McClinton's judgment of conviction is affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.